# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: November 8, 2023

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | | |
| KRISTINA AYCOCK, | * | |
| | * | No. 19-235 |
| Petitioner, | * | |
| | * | |
| v. | * | |
| | * | Special Master Gowen |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | | |

*Leah V. Durant*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.
*Lara A. Englund*, United States Department of Justice, Washington, DC, for Respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On October 27, 2021, Kristina Aycock ("Petitioner") filed a motion for attorneys' fees and costs. Petitioner's Motion for Attorney Fees ("Fees App.") (ECF No. 40). For the reasons discussed below, I **GRANT** Petitioner's motion for attorneys' fees and costs and award a total of **$69,854.84** and $400.00 in costs to petitioner.[2]

---

[1] Pursuant to the E-Government Act of 2002, *see* 44 U.S.C. § 3501 note (2012), because this decision contains a reasoned explanation for the action in this case, I am required to post it to a publicly available website. This decision will appear at https://www.govinfo.gov/app/collection/uscourts/national/cofc or on the Court of Federal Claims website. **This means the decision will be available to anyone with access to the Internet.** Before the decision is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). "An objecting party must provide the court with a proposed redacted version of the decision." *Id.* **If neither party files a motion for redaction within 14 days, the decision will be posted on the court's website without any changes.** *Id.*

[2] Petitioner filed an amended attorneys' fees and costs application on May 20, 2023. Pet. Mot. To Amend Mot. For Attorneys' Fees and Costs (ECF No. 61). This decision awards attorneys' fees and costs from both petitioner's initial application and her amended motion for attorneys' fees and costs.

1

I.      **Procedural History**

On February 12, 2019, petitioner filed a petition in the National Vaccine Injury Compensation Program.[3] Petitioner alleged that she suffered a right shoulder injury related to vaccine administration as a result of receiving an influenza vaccination on October 3, 2017. Petition at 1 (ECF No. 1).

After a review of petitioner's medical records, respondent filed the Rule 4(c) report recommending against compensation. Respondent's ("Resp.") Report ("Rept.") (ECF No. 15). Specifically, respondent stated that "the medical records do not support the onset of right shoulder pain within 48 hours of vaccine administration," and that petitioner's medical providers attributed her shoulder pain to a vaccination that was given "too low" in her arm, which is "patently inconsistent with SIRVA." *Id.* at 1. The case was transferred to my docket on April 6, 2020.

The undersigned held a status conference on April 22, 2020. Scheduling Order (ECF NO. 20). During the status conference, I directed petitioner to file a supplemental affidavit to address the onset of her pain and the delay in seeking treatment and to file an expert report addressing respondent's contention that she did not have an injury to the musculoskeletal structures of her shoulder and that the vaccine was administered "too low" to cause a SIRVA. Resp. Rept. At 5. Further, I gave the opportunity for respondent to file a responsive expert report.

Petitioner filed a supplemental affidavit on May 29, 2020, and filed an expert report by Uma Srikumaran, M.D. on June 23, 2020. Pet. Ex. 8. Dr. Srikumaran's expert report was accompanied by seven medical articles. I ordered respondent to file a responsive expert report. However, respondent sought to amend the schedule and have the deadline for a responsive expert report suspended while the parties pursue informal settlement negotiations. Resp. Motion to Amend (ECF No. 23). The parties engaged in settlement discussions and on April 28, 2021, filed a stipulation to award damages to petitioner. Stipulation (ECF No. 33). I entered a Decision awarding damages to petitioner on April 29, 2021. Decision (ECF No. 34).

On October 27, 2021, petitioner moved for final attorneys' fees and costs. Fees App. In her application, petitioner requested that her attorneys be awarded $36,741.30 in fees and $10,082.24 in attorneys' costs for a total of $46,823.54. *Id.* at 1. Additionally, petitioner stated that she has costs of $400.00 for the petition filing fee. *Id.* Petitioner filed both a billing statement for her attorneys and a detailed billing statement identifying the costs associated with her claim. Fees App., Tab 2. The majority of the costs associated with this claim was $4,250.00 billed by Dr. Srikumaran, for his review of petitioner's medical records, review of the medical literature, and drafting an expert report. *Id.* Dr. Srikumaran's invoice indicated that he charged an hourly rate of $1,000.00 per hour and performed 4.25 hours of work. Pet. Exhibit ("Ex.") 21 at 1.

---

[3] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2012) ("Vaccine Act" or "the Act"). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

Respondent filed a response to petitioner's motion, stating that he is "satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case, "and recommended that "the Court exercise its discretion and determine a reasonable award for attorneys' fees and costs." Resp. Response at 2-3.  However, in a footnote, respondent stated, "It is important to evaluate the reasonableness of the requested litigation costs, as petitioner are not given a 'blank check to incur expenses' to be paid by the Vaccine Trust Fund." *Id.* at 2 (citing *Riggins v. Sec'y of Health & Human Servs.,* No. 99-382V, 2009 WL 3319818, at * 7 (Fed. Cl. Spec. Mstr. June 15, 2009), *aff'd,* 106 Fed. Cl. 600 (Dec. 10, 2009), *aff'd* 406 Fed. Appx. 479 (Jan. 4, 2011). Respondent observed that special masters have wide discretion in determining the reasonableness of a petitioner's request for both attorneys' fees and for costs, but that "excessive, unsupported, or undocumented costs, including…upgraded methods of transportation, costly hotels, extravagant meals, alcohol, and expenditures unrelated to the Vaccine Act proceedings, are unreasonable and should not be borne by the Vaccine Program. *Id.* at 2, n.1 (citing *Van Vessen v. Sec'y of Health & Human Servs.,* No. 11-132V, 2018 WL 3989517, at *9-11 (Fed. Cl. Spec. Mstr. July 3, 2018); *McCurty v. Sec'y of Health & Human Servs.,* No. 15-405V, 2018 WL 5276700, a *5 (Fed. Cl. Spec. Mstr. Sept. 26, 2018); *Mostovoy v. Sec'y of Health & Human Servs.,* No. 02-10V, 2016 WL 720969, at *15-17 (Fed. Cl. Spec. Mstr. Feb. 4, 2016); *see also Riggins,* 2009 WL 3319819, at *12-14. Respondent did not specifically identify any unreasonable cost in the petitioner's fee application. None of the examples from the cited cases were present in this matter.

In petitioner's reply, petitioner stated that "counsel has accurately recorded the time spent on this case and has filed receipts documenting the litigation expenses incurred." Pet. Reply at 1. Petitioner argued that "respondent did not challenge any of the specific time entries charged by petitioner's counsel, nor did the Secretary object to any of the litigation expenses charged by counsel." *Id.* at 1-2. Petitioner requested that the Court award petitioner all fees and costs requested in the application. *Id.*

Based on the billing invoice of Dr. Srikumaran, the undersigned held a status conference on February 22, 2022, during which I noted that Dr. Srikumaran's hourly rate of $1,000.00 is well above the compensated rates that have been awarded to many other well-qualified experts. Scheduling Order (ECF No. 44). The undersigned ordered petitioner to file additional evidence to support the rationale for Dr. Srikumaran's hourly rate. *Id.*

On July 25, 2022, petitioner filed a brief justifying her expert's hourly rate and amended fee application. Pet. Brief and Amended Fee. App. (ECF No. 48). The amended fee application noted a correction to Dr. Srikumaran's bill to reflect a charge of $4,250.00, rather than $9,000.00 which had been billed in error, and an additional request of $3,000.00 in costs for the expert report prepared by Zachary Baretto of the Expert Institute.[4] *Id*. at 21-22. Petitioner amended the

---

[4] Zachary Barreto serves as the Senior Vice President of Research at the Expert Institute and has worked there for over 10 years. Pet. Ex. 20. He graduated from Vanderbilt University with a double major in Political Science and History and began his career as an Executive Recruiter for Objective Solutions International, exclusively making full time placements for PricewaterhouseCoopers. *Id*. The Expert Institute has been used by over 4,000 law firms for their expert witness needs. Mr. Barreto started the Research Team at the Expert Institute which locates, vets, screens, and pairs experts with attorneys, for the purpose of litigation. *Id*. The Expert Institute maintains a current data base of rates actually charged by experts in various medical fields. As such he has developed a knowledge base as it relates to expert billing and reasonable market rates for medical experts in the legal space.

fee application to $51,126.30 for attorneys' fees and $8,332.24 for litigation costs for a total of $59,458.54. *Id*. at 22. Petitioner's brief contained substantive analysis regarding Dr. Srikumaran's background and credentials as an orthopaedic shoulder surgeon, Dr. Srikumaran's significant educational credentials, hourly rates actually charged by Dr. Srikumaran in civil litigation outside the Vaccine Program, hourly rates actually charged by other similarly qualified orthopedic surgeons specializing in shoulder surgery, and statistical data regarding orthopedic expert rates in support of Dr. Srikumaran's hourly rate. *Id*. In addition to the brief, petitioner filed an affidavit from Mr. Barreto of the Expert Institute who examined the rates charged by Dr. Srikumaran and compared his rates to other orthopaedic surgeon experts from the northeast. Pet. Ex. 20. Petitioner's substantive arguments regarding Dr. Srikumaran's expert rates and expert rates generally will be discussed in detail below.

On October 31, 2022, petitioner filed a supplemental brief regarding expert fees and an amended fee application, along with an affidavit from Mr. Barreto outlining expert fees for other medical specialties.[5] Pet. Supplemental ("Supp.") Brief (ECF No. 54); Pet. Ex. 25 (ECF No. 53). The amended fee application included an additional $5,000.00 in litigation costs for Mr. Barreto's work, and $1,470.00 in additional attorney fees. Pet. Supp. Brief at 3. The total for attorneys' fees is $52,596.30, and the total for costs is $13,332.24. On February 2, 2023, respondent filed a response to the original motion for attorneys' fees and costs, and filed a letter from Dr. George Grimes, the Director of the Division of Injury Compensation Programs. Resp. Response; Attachment A (ECF No. 57).

I convened another status conference on March 8, 2023, and on request from petitioner, I ordered petitioner to file a concise reply brief regarding expert rates. *See* Scheduling Order, Non-PDF, March 9, 2023. Petitioner filed a Reply Brief justifying her expert's hourly rate and amended fee application. Reply Brief (ECF No. 60). Petitioner requests an additional $3,926.30 for attorneys' fees, requesting a total $56,522.60 in attorney's fees, $13,332.24 in costs, totaling $69,854.84, and $400.00 for petitioner's personal litigation costs. *Id*. at 10.

This matter is now ripe for adjudication.

## II.     Legal standard for attorneys' fees and costs

The Vaccine Act provides that the special master shall award "reasonable" attorneys' fees and costs for any petition that results in an award of compensation. § 300aa–15(e)(1). In this

---

[5] This additional affidavit by Mr. Barreto was requested by the court during a conference with counsel for both parties. The court requested this additional report to obtain market rate data for other medical specialties whose practitioners frequently opine or testify in vaccine cases. *See* Pet. Ex. 25. The average hourly rate for case review and report writing for top 20% experts in their fields were Neurology $841, Immunology $793, Rheumatology $779, Infectious Disease $786, Pediatric Neurology $779, Pediatric Rheumatology $617. If averaged among these specialties a market rate would be $755. Petitioners' experts requesting fees higher than the prior cap must do so on a case-by-case basis and must provide support for higher rates and hours billed. *See Perreira v. Sec'y of Health & Human Servs.,* No. 90-847V, 1992 WL 164436, at *4 (Cl. Ct. Spec. Mstr. June 12, 1992), *aff'd* 33 Fed. 3d. 1375 (Fed. Cir. 1994). Any requests for higher expert rates should not exceed these figures and must be justified on a case-by-case basis.

case, petitioner was awarded compensation pursuant to a joint stipulation. Therefore, she is entitled to an award of reasonable attorneys' fees and costs.

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Under the lodestar approach, a court determines the number of hours reasonably expended in the case and reasonable hourly rates for the attorney(s) involved. Id. at 1347-58 (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The court multiplies those numbers and may adjust the sum upwards or downwards based on other specific findings.

Petitioners "bea[r] the burden of establishing that the hours expended, the rates charged, and the expenses incurred" are reasonable. *Wasson v. Sec'y of Health & Human Servs.,* 24 Cl. Ct. 482, 484 (1993). A request for attorneys' fees should be supported by contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *Savin v. Sec'y of Health & Human Servs.,* 85 Fed. Cl. 313, 316-18 (Fed. Cl. 2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Human Servs.,* 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgement, [is] reasonable for the work done." Id. at 1552. The special master may reduce a request *sua sponte*, apart from objections raised by respondent and without providing petitioner notice and opportunity to respond. *Sabella v. Sec'y of Health & Human Servs.,* 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Human Servs.,* 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).

The "reasonableness" requirement also applies to costs. *Perreira v. Sec'y of Health & Human Servs.,* 27 Fed. Cl. 29, 34 (1992). A request for costs incurred by either counsel or the petitioner himself should include supporting documentation, such as invoices from experts and itemized receipts. Like a request for attorney's fees, a request for costs may be reduced *sua sponte* and based on the special master's experience and discretion.

　　a. **Attorneys' hourly rates**

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

Succinctly stated, the forum rate is the "default rate" unless there is a "very significant difference" between local and forum rates. For cases in which forum rates apply, *McCulloch* provides a framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. *McCulloch v. Sec'y of Health & Human Servs.,* No 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015) motion for recons. denied,

5

2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). The Court has since updated the *McCulloch* rates, and the Attorneys' Forum Hourly Rate Fee Schedules for 2015-2016 and from 2017-2023, which can be accessed online.

Petitioner requests a total of $56,522.60 in attorneys' fees. *See* Fees. App; Pet. Brief and Amended Fee. App; Pet. Supp. Brief. Petitioner requests the following rates for the work of her counsel: for Ms. Leah Durant, $377.00 per hour for work performed in 2018, $395.00 per hour for work performed in 2020, and $420.00 per hour for work performed in 2021; and for Mr. Mike Milmoe, $464.00 per hour for work performed in 2019, $484.00 per hour for work performed in 2020, $509.00 per hour for work performed in 2021, $525.00 per hour for work performed in 2022, and $553.00 per hour for work performed in 2023. The rates from 2018-2022 are consistent with what Ms. Durant and Mr. Milmoe have previously been awarded for their Vaccine Program work, and I find them to be reasonable herein. *See, e.g., Durand v. Sec'y of Health & Human Servs.*, No. 15-1153V, 2020 WL 639372, at *3 (Fed. Cl. Spec. Mstr. Jan. 16, 2020). Mr. Milmoe has not yet been awarded the forum rate of $553.00 per hour for his work in 2023, but that rate is reasonable and consistent with the Attorney's Fee Hourly Rate Fee Schedule and shall be awarded.

### b. Attorneys' hours expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." Avera, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxon*, 3 F.3d at 1521 (quoting, *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

After a review of the billing log, I have determined that no reduction is necessary, and petitioner shall be awarded the full amount of $56,522.60.

### c. Attorneys' costs

Similar to attorneys' fees, a request for reimbursement of costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.,* 27 Fed. Cl. 26, 34 (1992). Petitioners request a total of $13,332.24 in costs in costs. *See* Fees. App; Pet. Brief and Amended Fee. App; Pet. Supp. Brief. These costs include obtaining petitioner's medical records, the filing fee, postage, and costs associated with the experts that have provided opinions in this matter. Costs such as, the filing fee, postage, and obtaining medical records are routinely reimbursed and petitioner has provided adequate documentation for such costs.

### 1. Expert costs: Dr. Srikumaran

### A. Parties' arguments

Dr. Srikumaran billed at an hourly rate of $1,000.00 per hour and worked a total of 4.25 hours reviewing petitioner's medical records, reviewing the respondent's Rule 4(c) report, reviewing medical literature, and providing a report on vaccine causation together with supportive medical literature. His total costs are $4,250.00.

6

Initially, respondent did not specifically identify any deficiencies or objections to petitioner's costs. *See* Response at 2, n.1. To support the reasonableness of Dr. Srikumaran's hourly rate, petitioner filed a supplemental brief, affidavits from other orthopedic surgeons, and an affidavit from Mr. Zachary Barreto from The Expert Institute that outlines hourly rates charged by general orthopedic surgeons and orthopedic shoulder surgeons specifically. *See* Pet. Supp. Brief; Pet. Exs. 17-25.

In her supplemental brief, petitioner argues that the reasonable hourly rate for Dr. Srikumaran should be based on the prevailing amount charged and received for equivalent expert work performed in the Washington, D.C. region, the prevailing rate for similarly situated experts in cases in the Vaccine Program, the experience of Dr. Srikumaran in both Vaccine Program cases and in the practice of medicine generally, and the quality of work that Dr. Srikumaran performs in Vaccine Program cases, as well as his reputation in the medical community. Pet. Supp. Brief at 6. Petitioner states that "the Special Master must compare Dr. Srikumaran and the hourly rate he charges for legal work with other shoulder orthopedic surgeons of 'reasonably comparable skill, experience, and reputation.' " *Id.*; citing *Avera v. Sec'y of Health & Human Servs.,* 515 F.3d at 1348 (quoting *Blum v. Stenson,* 465 U.S. 886, 895, n.11); *see also Hensley v. Eckerhart*, 461 U.S. 424, 429-37 (1983).

Using the criteria petitioner outlined above, she argued that Dr. Srikumaran is in "an elite class" of orthopedic surgeons, as he was trained in medicine and orthopedic surgery at the Johns Hopkins School of Medicine, and he completed a fellowship in shoulder surgery at Harvard University Medical School. Pet. Supp. Brief at 6. In addition to being the Chair of Orthopaedic Surgery for the Howard County General Hospital and serving as the Medical Director of the Johns Hopkins Musculoskeletal Service Line at the Columbia, Maryland location, he is active in academia with teaching and research responsibilities at Johns Hopkins. *Id.* at 6-7. He runs the Shoulder Fellowship Program at Johns Hopkins. In addition to many other articles related to shoulder surgery, Dr. Srikumaran has published two articles relating to Shoulder Injury Related to Vaccine Administration ("SIRVA"), which is precisely the injury petitioner suffered in the underlying claim. *Id.* Petitioner stated that Dr. Srikumaran also presented twice before the Advisory Council for Childhood Vaccines ("ACCV") about SIRVA. *Id.*

Petitioner also argues that the rate that Dr. Srikuaraman is requesting for his work before the Vaccine Program is consistent with the rates that he charges when asked to be an expert witness outside the program. Pet. Supp. Brief at 9. Petitioner states that Dr. Srikumaran has an "established track record of being compensated for expert consultation at his requested hourly rate." *Id.* Furthermore, petitioner states that Dr. Srikumaran has been involved in twelve cases in state court and charged the attorney an hourly rate of $1,000.00 for his case review and reports. *Id.* at 10. Dr. Srikumaran acknowledges that "not many orthopedic specialists, especially those specializing in shoulders, participate in legal cases," but that he has been mentoring colleagues who are participating as experts in court cases. *Id.*

Petitioner also provided a comparison of Dr. Srikumaran's hourly rate to two other shoulder specialist orthopaedic surgeons, Dr. Edward McFarland and Dr. Joseph Abboud. Pet. Exs. 17 &18. Both Dr. McFarland and Dr. Abboud charge $1,000.00 per hour for reviewing medical records, writing reports, and phone consultations. Pet. Supp. Brief at 10. Dr. McFarland

practices at Johns Hopkins and Dr. Abboud is a professor of Orthopaedic Surgery at the Thomas Jefferson University in Philadelphia, Pennsylvania and is a physician at the Rothman Orthopaedic Clinic.  Pet. Exs. 17 &18.  Both specialize in shoulder surgery.  *Id.*

Additionally, petitioner filed two affidavits from Mr. Zachary Barreto with The Expert Institute.  Pet. Ex. 20 & 25.  Mr. Barreto explained that The Expert Institute works with law firms to identify expert witnesses.  Pet. Ex. 20 at 1.[6]  He emphasized the importance of top tier experts in terms of the value and credibility of their testimony.  He said that experts on the high end are typically University affiliated physicians with Ivy League or other leading institution connections that are actively practicing and have strong research and publication backgrounds.  They are often recognized by their peers as authorities in the field.  *Id.*

In his affidavit addressing rates of orthopedists, Mr. Barreto explained that Dr. Srikumaran, being an orthopedic shoulder surgeon in the northeast "falls into a category that has a higher reasonable hourly market rate than most other expert specialties."  Pet. Ex. 20 at 1.  He noted that Dr. Srikumaran is a "Harvard Fellowship trained physician who is currently practicing at the #1 ranked medical school in the country for the specialty of surgery."  *Id*[7].  Furthermore, Mr. Barreto observed that Dr. Srikumaran runs the Shoulder Fellowship Program at Johns Hopkins and publishes medical literature regularly, including on the topic of Shoulder Injury Related to Vaccine Administration ("SIRVA").  *Id.*  He stated that because of these qualifications, Dr. Srikumaran "certainly falls within the top 10% of experts in his specialized orthopedic surgery field."  *Id.*

Mr. Barreto explained that orthopedic surgeons are typically called as experts to testify in medical malpractice or personal injury cases, which is different from what he was asked to do as an expert in the Vaccine Program.  *Id.* Because the issues in vaccine cases typically require the experts to explain the actual causation of injuries it requires detailed explanation of the anatomy and the mechanism of injury in this case to the shoulder.  It generally requires the research and production of supporting literature.  He wrote that, "This category of experts that can do this type of research and case review is much smaller than the number of experts that can typically perform orthopedic surgery expert work."  *Id.* at 2.  However, he did observe that orthopedic experts typically "trifurcate" their fees, charging more for giving a deposition or providing testimony at a trial than they do for research and report writing.  *Id.* at 3.  It was his opinion that Dr. Srikumaran's hourly rate of $1,000.00 per hour for his expert services in the Vaccine Program is reasonable, based on his education, area of specialty, geographic region, and experience.  *Id.* at 2-3.

Respondent stated that he "does not object in principle to the Court raising the informal cap on expert hourly rates that had previously been set at approximately $500.00 per hour."  Resp. Brief at 1.  Respondent asserted that "the highest rate should continue to be reserved for the most qualified experts opining on the most complex medical issues."  *Id.* at 2.  It was

---

[6] Mr. Barreto's affidavit states that The Expert Institute serves over 4,000 law firms "for their expert witness needs," and that the Institute works with tens of thousands of medical experts and maintains a database of expert fees. Furthermore, Mr. Barreto regularly provides information to attorneys on expert billing and rate related questions. He has served as an expert on expert fees in civil matters.

[7] Citing to US News Rankings of Best medical Schools

respondent's position that "the appropriate rates to apply in the [Vaccine] program are the "hourly review rates," as opposed to the deposition or trial rates. *Id.* at 1. Respondent stated that "the vast majority of the work performed by experts in the Vaccine Program consists of reviewing medical records and literature and drafting reports." *Id.* Further clarifying, the respondent stated that a higher trial rate is not appropriate because the Vaccine Program "uniquely accommodates" the schedule of experts in setting hearing dates. *Id.* Respondent argued that a nationwide rate would be most appropriate, as the Vaccine Program draws experts from all parts of the country. Finally, respondent argued that a cap for each specialty may be difficult to administer, but a "single cap based on an average of the different specialties" that are typically involved in vaccine cases may be a more appropriate way to determine reasonable hourly rates. *Id.* at 2. Respondent noted that the average of the rates for the specialties Mr. Barreto identified in his second report is $725.00 per hour. Respondent asserted that using an average of the top 20% of the experts would "allow a few outliers with very high rates to skew the averages," and this is "especially true of the specialties with relatively few values." *Id.* Finally, respondent requested that the Court take into consideration the hourly rate that respondent pays experts who appear on his behalf when determining a reasonable hourly rate which was $375 an hour. *Id.* at 3.

### B. Discussion of reasonable expert costs

Petitioner's bear "the burden of establishing the hours expended, the rates charged, and the expenses incurred." *Wasson v. Sec'y of Health & Human Servs.,* 24 Cl. Ct. 482, 484 (1991). A special master has "wide discretion in determining the reasonableness of attorneys' fees and costs. *Perreira,* 27 Fed. Cl. 29, 34 (1992), *aff'd* 33 F.3d 1375 (Fed. Cir. 1994). "Fees for experts are subject to the same reasonableness standards as fees for attorneys." *Baker v. Sec'y of Health & Human Servs.,* No. 99-635V, 2005 WL 589431, at *1 (Fed. Cl. Spec. Mstr. Feb. 24, 2005).

The issue of what are reasonable expert costs has come up from time to time in the Vaccine Program. *See Wilcox v. Sec'y of Health & Human Servs.,* 1997 WL 101572 (Spec. Mstr. Fed. Cl. Feb. 1997). "What a reasonable rate is for an expert has proven a somewhat vexing issue over the history of the Vaccine Program." *Simon v. Sec'y of Health & Human Servs.,* No. 05-941V, 2008 WL 623833 (Fed. Cl. Spec. Mstr. Feb. 21, 2008). In *Wilcox,* the special master looked at how other Courts determine reasonable expert fees and what factors are considered for measuring reasonable expert fees. *Wilcox,* at *4. The special master observed that there is limited guidance from case law as to what constitutes a reasonable expert fee; however, the special master found a discussion of factors to be considered in *McClain v. Owens-Corning Fiberglass Corp.* 1996 WL 650524, at * 3 (N.D.Ill). *Id.* According to *McClain,* the following factors have been considered when determining a reasonable expert fee: (1) the witness' area of expertise; (2) the education and training required to provide the expert insight that is sought; (3) the prevailing rates for other comparably respected available experts; (4) the nature, quality, and complexity of the information provided; (5) the cost of living in the particular geographic area; and (6) any other factor likely to be of assistance to the court in balancing the interests implicated by the [Vaccine Act]. *McClain,* 1996 WL 650524, at *3. Additionally, courts may also look to (1) the fee actually charged to the party who retained the expert; and (2) fees traditionally charged by the expert on related matters. *McClain,* at *5 (citing

9

*Bowen v. Monahan,* 163 F.R.D. 571, 573 (D.Neb.1995); *Jochims v. Isuzu Motors, Ltd.,* 141 F.R.D. 493, 496 (S.D.Iowa 1992).  While there is no uniform framework that applies to expert hourly rates, other special masters have used these factors to consider experts' hourly rates.  *See Sabella v. Sec'y of Health & Human Servs.,* 86 Fed Cl. 201, 206 (2009); *see also O'Neill v. Sec'y of Health & Human Servs.,* No. 08-243V, 2015 WL 2399211, at *16 (Fed. Cl. Spec. Mstr. Apr. 28, 2015).

In *Simon,* when confronted with the issue of whether to raise the rates for a neurologist expert, the petitioner and respondent proposed a set of factors to determine the "reasonableness" of a petitioner's expert's hourly rate.  *Simon,* 2008 WL 623833, at *3.  The special master stated that the agreed upon factors were as follows:

> an expert's education, training, and experience; the expert's academic affiliations; an expert's publications; the expert's area of expertise; the expert's board certifications; the prevailing market rates for comparable experts; the expert's efficient use of time; and the nature, quality and complexity of the information provided.

*Id.* Additionally, the court considered the expert's experience in the Vaccine Program; and past Vaccine Program decisions finding the witness credible.  *Id.,* at *4.  The special master also relied upon the testimony of a consultant in expert witness placement in that case.  *Id.*, at *7.  Based upon that testimony and the background of the expert, Chief Special Master Golkiewicz approved a rate of $500.00 per hour for a neuro-immunologist for the first time.  *Id.* In approving the rate, then Chief Master Golkiewicz emphasized that by virtue of the expert's significant expertise in the field and in the Vaccine Program that he should be able to efficiently address the issues before the court and accordingly require fewer billable hours for research and review than a less experienced expert would.  *Id*. at *6.

With no uniform rate set for experts in the Vaccine Program, special masters have relied upon past rates that have been previously approved for experts and their own experience and knowledge of an expert's work in a particular case.  *See Duguay v. Sec'y of Health & Human Servs.,* No. 18-340V, 2023 WL 5791853 (Fed. Cl. Spec. Mstr. July 27, 2023) (reducing petitioner's expert's hourly rate because the expert rate exceeded previously awarded hourly rates); *Eilan v. Sec'y of Health & Human Servs.,* No. 15-381V, 2023 WL 19092, at *1 (Fed. Cl. Spec. Mstr. Jan. 3, 2023) (approving petitioner's expert's rate because it had previously been awarded)..  This practice has resulted in an "informal cap" on expert rates.  *See* Resp. Status Rept. (stating "….respondent does not object in principle to the Court raising the cap on expert hourly rates that had previously been set at $500.00 per hour.").  As a result of this practice, the expert hourly rates in the Vaccine Program have remained relatively constant with the top rate at approximately $500.00 per hour for a considerable period of time.  *See e.g. Simon v. Sec'y of Health & Human Servs.* No. 05-941V, 2008 WL 623833 (Fed. Cl. Spec. Mstr. Feb. 21, 2008) (finding that a $500.00 hourly rate for a pediatric neurologist was reasonable); *Brown v. Sec'y of Health & Human Servs.,* No. 09-426, 2012 WL 952268 (Fed. Cl. Spec. Mstr. Feb. 29, 2012) (awarding $500.00 per hour for an immunologist expert); *Chynoweth v. Sec'y of Health & Human Servs.,* No. 13-721V, 2017 WL 6892900 (Fed. Cl. Spec. Mstr. Oct. 30, 2017) (awarding an immunologist $500.00 per hour); *Kern v Sec'y of Health & Human Servs.,* No. 16-150V, 2020 WL 8674682 (Fed. Cl. Spec. Mstr. Dec. 9, 2020) (approving an hourly rate of $500.00 per hour

for an immunologist expert); *O'Neal v. Sec'y of Health & Human Servs.,* No. 16-122V, 2021 WL 320616 (Fed. Cl. Spec. Mstr. Jan. 5, 2021) (approving an hourly rate of $500.00 per hour for a neurology expert); *Jaafar v. Sec'y of Health & Human Servs.,* No. 15-267V, 2019 WL 2265329 (Fed. Cl. Spec. Mstr. Apr. 26, 2019) (approving a rate of $500.00 per hour for a neurology expert).

In recent decisions however, an hourly rate of $550.00 has been approved for experts that have substantial expertise in their field and in the Vaccine Program. *See Gardner v. Sec'y of Health & Human Servs.,* No. 17-1851V, 2023 WL 3775170 (Fed. Cl. Spec. Mstr. June 2, 2023) (approving $550.00 per hour for work performed by Lawrence Steinman, M.D.) and *K.G. v. Sec'y of Health & Human Servs.,* No. 18-120V, 2023 WL 2770914 (Fed. Cl. Spec. Mstr. Apr. 4, 2023) (awarding $550.00 per hour for work performed by another expert).

Since the informal cap has been in place for at least the last ten years, inflation in general, and costs in the expert field have increased. Mr. Barreto addressed this issue in his report. He stated, "…there has been a natural rise in market rates across the board over the past 10 years. This can partially be attributed to inflation, but there are other factors affecting this rise as well. The expert consulting industry has grown on a large scale, and not just in the legal market. Pharmaceutical companies, medical device companies, hedge funds, large investment firms, etc. all use experts to help guide their decision making and they have vast resources. Because of this, they demand the top key opinion leaders and will pay large sums to procure their time. This has driven up the fair market rate for expert consulting across the board." Pet. Ex. 25 at 3.

One of the underlying purposes of the Vaccine Act was to ensure that vaccine injury claimants have readily available competent bar to prosecute their claims." *Avera,* at 1343. This includes access to high quality experts. As observed in *Simon,* "This is especially true given the declining relevance of the Vaccine Injury Table and the increase in number of cases where petitioners must prove that the vaccine in-fact caused the alleged injury." *Id.*, at *2. This observation continues to be relevant in the large number of contested cases in the Program which require expert testimony, such as this one.

In this case, petitioner provided additional evidence to support Dr. Srikumaran's hourly rate of $1,000.00 per hour. The affidavits from Mr. Barreto of The Expert Institute provided objective data about the average hourly rates for experts in certain fields, including orthopaedic surgery. He also observed that most of the time, orthopaedic surgeons are asked to provide their opinion in cases involving medical malpractice or personal injury cases, where the focus is not necessarily on complicated issues of injury causation, as they are in Vaccine Program cases, lending a different degree of complexity to opinions provided in Vaccine Program cases. Pet. Ex. 20 at 1. While he acknowledged that other orthopaedic surgeons, along with other experts, charge differing rates based on the work they are performing, Mr. Barreto justified Dr. Srikumaran charging a single rate for all work performed for cases in the Vaccine Program because the cases are "more complex,"than many non-vaccine cases in which orthopedic surgeons are called to testify. *Id.* Finally, Mr. Barreto provided that the average rate for the top 20% of orthopaedic surgeons in the northeast for review of a case is $862.00 per hour, with the maximum hourly rate being $2,500.00 per hour. *Id.* at 4. The average rate for orthopaedic shoulder surgeon experts for reviewing a case is $1,687.00. *Id.* Thus, it appears that Dr.

11

Srikumaran's hourly rate of $1,000.00 is slightly higher than the average rate for *all* orthopaedic surgeon experts in the northeast,[8] but is below the average hourly rate that is charged by the top 20% of orthopaedic shoulder surgeons for review of cases.

The affidavits of Drs. Edward G. McFarland Jr. and Joseph Abboud provide additional information about the prevailing rates of orthopaedic shoulder surgeons from the northeast. *See* Pet. Exs. 18 and 19. Dr. McFarland also practices at the Johns Hopkins University School of Medicine and also exclusively performs shoulder surgery. Pet. Ex 17 at ¶ 1. Dr. McFarland explained that he charges $1,000.00 per hour for a review of records, consultations, and generation of reports. *Id.* at ¶ 2. He indicated that he charges different hourly rates for depositions and testimony at trial, that are well above the rate of $1,000.00 per hour that Dr. Srikumaran is requesting. *Id.* Dr. Joseph Abboud, who practices in Philadelphia, Pennsylvania, stated that he charged $1,000.00 per hour for case review, report generation, and consultation and significantly higher rates for deposition and trial appearances. Pet. Ex. 18 at ¶ 3. Furthermore, both doctors stated that Dr. Srikumaran has an outstanding international reputation as "one of the world's foremost orthopedic experts on shoulder conditions." *Id.* at ¶ 5; Pet. Ex. 17 at ¶ 3.

Finally, the expert report that Dr. Srikumaran provided in this matter ultimately led the case to resolution. The government initially contested petitioner's claim for a Table SIRVA, arguing that petitioner's pain did not begin within the requisite time period of 48-hours and that the vaccine was given "too-low," which negated the presumption of a Table SIRVA. Resp. Rept. at 4-5. Dr. Srikumaran provided an expert report that explained why patients delay seeking treatment for orthopedic conditions and how an allegedly "low" injection does not negate a SIRVA injury. Pet. Ex. 8. After the filing of the report, the respondent sought to engage in settlement negotiations with the petitioner and the case was ultimately resolved by stipulation.

Top tier experts (as described by Mr. Barreto) such as those who frequently testify before the Vaccine Program are generally necessary in order to credibly establish causation.[9] I agree with respondent that at times, the total amount of fees charged by an expert may be unreasonable and a reduction may be necessary if an expert's hours expended are excessive compared to the complexity of the case. Furthermore, I agree with respondent that a flat hourly rate in the Vaccine Program is more appropriate, compared to the three different rates experts use for different activities (review and report writing; depositions; and testimony).

Even though Dr. Srikumaran's hourly rate is higher than what has been paid to date to other experts in the Vaccine Program, he produced a persuasive expert report with supporting medical literature in 4.25 hours, resulting in an overall reasonable fee. Furthermore, given the additional evidence petitioner submitted to support Dr. Srikumaran's expert fee, including the objective evidence demonstrating the rates of other similarly situated orthopaedic shoulder surgeons, Dr. Srikumaran's expertise as an orthopaedic surgeon who focuses on the shoulder,

---

[8] I used the data for the northeast United States as being most representative of rates charged in the Washington D.C. area.

[9] While many of the experts who testify in the Vaccine Program meet the criteria for top 20%, not all do and experts not meeting that criteria should more appropriately charge at lesser rates.

12

the quality of work he performed in this matter, and his efficient use of time, Dr. Srikumaran's overall fee is reasonable. Thus, Dr. Srikumaran's total costs of $4,250.00 shall be awarded in full.

### 2. Costs associated with Mr. Barreto

Petitioner also submitted an invoice for costs associated with Mr. Barreto's research and reports on the matter of reasonable expert costs. Petitioner submitted two invoices for Mr. Barreto's work. The first invoice, dated May 25, 2022 is for $3,000.00 and under service description is provides: "Case: Dre Expert Witness Service," and then "Specialty: Expert Witness Services." Pet. Ex. 24 at 1. The second invoice is an invoice dated December 8, 2022 from Zachary Barreto for $5,000.00. This invoice does provide a breakdown of the work performed and the amount of time spent on each task. Pet. Amend. Fees. Additionally, the invoice indicates that Mr. Barreto charged $500.00 per hour. *Id.* The Court had requested that Mr. Barreto provide additional information to the Court regarding different categories of experts. As the Court had requested that Mr. Barreto provide this information regarding expert rates, in order to provide the Office of Special Masters with data regarding medical expert fees in light of inflation that has occurred since the time that the informal cap was established, and that the data he provided was helpful in understanding current market rates, these fees shall be paid in full.

### d. Petitioner's costs

Pursuant to General Order No. 9, petitioner indicated that she had personally incurred costs of $400.00 in pursuit of her claim. This cost is the Court's filing fee, and it is reasonable. As such, petitioner shall be fully reimbursed.

### III. Conclusion

In accordance with the above, petitioner's application for final attorneys' fees and costs is **GRANTED.** I find that she is entitled to the following reasonable attorneys' fees and costs:

**Attorneys' Fees and Costs:**

| | |
|---|---|
| Attorneys' Fee Requested: | $56,522.60 |
| (Reduction of fees): | ------------- |
| **Final Attorneys' Fees Award:** | **$56,522.60** |
| | |
| Final Attorneys' Costs Requested: | $13,332.24 |
| (Reduction of attorneys' costs): | ------------- |
| **Final Attorneys' Costs Awarded:** | **$13,332.24** |
| | |
| **Final Petitioner's Costs Awarded:** | **$400.00** |

Accordingly, I award the following:

13

1) **A lump sum in the amount of $69,854.84 for attorneys' fees and costs in the form of a check payable to petitioner and her attorney, Leah V. Durant of the Law Offices of Leah V. Durant, PLLC; and a lump sum of $400.00 in the form of a check made payable to petitioner.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court shall enter judgment in accordance herewith.[10]

**IT IS SO ORDERED.**

**s/Thomas L. Gowen**
Thomas L. Gowen
Special Master

---

[10] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).